UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

vs.                                                    Case No. 8:16-CR-422-T-27MAP

WILLIAM HAROLD WRIGHT, JR.

_____/

## ORDER

Before the Court is Defendant's *pro se* Motion to Reconsider Motion to Disqualify the Honorable James D. Whittemore (Dkt. 139).[1] The motion is legally insufficient and therefore provides no valid basis for disqualification.[2] The motion is DENIED.

### Applicable Standards

A judge should disqualify himself only if a reasonable person would question his impartiality. *Giles v. Garwood*, 853 F.2d 876, 878 (11th Cir.1988), *cert. denied*, 499 U.S. 1030 (1989). "The bias must arise from an extrajudicial source, except in the rare case 'where such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party.'" *Id.*, *quoting Davis v. Board of School Commissioners*, 517 F.2d 1044, 1052 (5th Cir.1975), *cert. denied*, 425 U.S. 944 (1976)).

Under § 455(a), a sufficient basis for disqualification exists when "an objective, disinterested,

---

[1] Defendant's prior motion to disqualify the undersigned was denied (Dkts. 86, 91).

[2] Two statutes govern the disqualification or recusal of a federal district judge, 28 U.S.C. §§ 144 and 455. Section 144 provides for recusal when a party files a timely and sufficient affidavit and motion alleging the judge is personally biased or prejudiced against him or in favor of an adverse party:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

Defendant did not file an affidavit. Notwithstanding, Section 455(a) sets forth the general rule that a judge shall "disqualify himself in any proceeding in which his impartiality might reasonably be questioned," and lists several specific situations in which a judge must do so, none of which are applicable here. 28 U.S.C. § 455(b).

lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir.1988). Actual prejudice need not be shown, as § 445 was intended to "promote public confidence in the impartiality of the courts by eliminating even the appearance of impropriety." *United States v. Alabama*, 828 F.2d 1532, 1541 (11th Cir.), *cert. denied*, 487 U.S. 1210 (1988).

## Discussion

First, to the extent he again complains about the denial of his motion to dismiss, "'adverse rulings alone do not provide a party with a basis for holding that the court's impartiality is in doubt.'" *See Lawal v. RTM*, 260 Fed.Appx. 149, 152 (11th Cir. 2006) (*quoting Byrne v. Nezhat*, 261 F.3d 1075, 1103 (11th Cir.2001)).[3] Second, the comments directed to him during the November 2, 2017 status conference do not support disqualification, whether on the basis of personal bias or prejudice or because the undersigned's impartiality might reasonably be questioned.

This case was scheduled for trial on the November 2017 calendar. Less than two weeks before the status conference, CJA counsel Tim Fitzgerald had been reappointed at Defendant's request.(Dkts. 117, 122). In June, Fitzgerald had been discharged at Defendant's request, the circumstances for which are explained in the Magistrate Judge's June 8, 2017 Order (Dkt. 85).[4] The status conference was scheduled at Fitzgerald's request because of the voluminous discovery he had not been able to review because of his discharge.

---

[3] In his earlier motion to disqualify, he took issue with the orders denying his request to discharge his appointed counsel and his Motion to Dismiss (Dkts. 77, 78).

[4] Tellingly, the Magistrate Judge found:

> At yesterday's hearing, the Defendant stated clearly he no longer wanted Fitzgerald to represent him, a sentiment typified when he earlier refused to meet Fitzgerald at the jail. Having repeatedly forewarned the Defendant about his choices - to continue with Mr. Fitzgerald as his counsel or to represent himself - the Defendant without hesitation elected to represent himself. A Faretta inquiry and my admonitions otherwise (at past hearings and at yesterday's) did not change his mind. As I reminded the Defendant at the hearing's close - he is now on his own, a comment he repeated and a reality he knowingly and willfully accepted.

(Dkt. 85 at p. 6).

Although Defendant had been warned by the undersigned and the Magistrate Judge that he would be deemed to have waived the right to counsel if he continued to find fault with appointed counsel, that is exactly what was about to occur when the complained of remarks were made. During the status conference, he tendered yet another motion to discharge Fitzgerald, prompting the comment that if the motion was filed, it would be granted and the case called up for trial.[5]

---

[5] The record demonstrates that Defendant has been represented by at least three attorneys, two of whom were appointed under the CJA. (Dkts. 5, 12, 24). After his first CJA attorney was appointed, he retained counsel, resulting in the discharge of CJA counsel (Dkts. 12, 14). Less than a month later, he sought the discharge of his privately retained attorney, assuring the Magistrate Judge that he would not seek the discharge of court appointed counsel if one was appointed after his privately retained attorney withdrew (Dkt. 42, at p. 2). Notwithstanding, after Fitzgerald was initially appointed, he corresponded with the Court, complaining about Fitzgerald, and requesting that he be discharged. In the order referring that request to the Magistrate Judge, he was instructed that although he had the "absolute right to be represented, he [did] not have the right to dictate who will be appointed to represent him." (Dkt. 37). And relevant to the instant motion to disqualify, after a hearing, the Magistrate Judge denied his request to appoint a new CJA attorney, observing:

> The Sixth Amendment guarantees a defendant the right to counsel; it does not, however, guarantee a defendant the unqualified right to demand the court appoint a different lawyer than the one the court initially assigned. *United States v. Garey*, 540 F.3d 1253, 1263 (11th Cir. 2008) (en banc). "In practical terms, then, defendants who lack the means to hire a private attorney must either accept the counsel appointed to represent them or represent themselves." *Id.* at 1263-64. The exception to this rule, and the guiding principle for substituting one appointed counsel with another, is if the defendant provides "good cause" for requesting the substitution. *Id.* at 1263. And "in this context," good cause means "a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *Id.*
>
> The Defendant, despite his claims otherwise, has not shown his current lawyer suffers from a conflict of interest. Nor has he shown that he and his current lawyer have had a complete breakdown in communication, at least one that is not of the Defendant's own making. The Defendant is free to cooperate with his experienced and highly regarded counsel; or he can choose not to. If he does not (by "his words and conduct"), and if he rejects both appointed counsel and self-representation, then he risks by his uncooperativeness rejecting "the only counsel to which he is constitutionally entitled, understanding his only alternative is self-representation with its many attendant dangers." *Id.* at 1265.
>
> At this stage, the Defendant is unhappy with every attorney who has represented him – the ones the Court appointed and the one he retained. As I informed him at the hearing, his family or friends are free to hire counsel for him (with the understanding that a continuance of the March trial is not assured even if a new attorney were to appear). The Defendant would be wise to change his behavior, but that too is his choice to make. For all these reasons, the Defendant's motion to substitute counsel (doc. 37) is DENIED. If the Defendant's uncooperativeness continues, the appropriate approach will be to advise the Defendant "with accurate information regarding his lawful choices and asking him to choose between them." *Id.* at 1265-66. And if he then continues to reject competent counsel through his uncooperative behavior (or his explicit renunciation of counsel), the Court may, "in its discretion, conclude the [D]efendant has voluntarily waived his right to counsel." *Id.* at 1266.

(Dkt. 42 at p. 3 - 5).

Considering his history of dissatisfaction with counsel, his recent request to have Fitzgerald reappointed, and his intent to file yet another motion to discharge Fitzgerald on the eve of trial, the undersigned's impartiality cannot reasonably be questioned as a result of the comments advising him that the motion would be granted if filed, and the case called up for trial immediately. And they do not evidence the type of personal bias or prejudice sufficient to warrant disqualification.[6]

The question is whether comments made "in a judicial context demonstrate such pervasive bias and prejudice that it constitutes bias against a party." *Davis v. Board of School Commissioners of Mobile County*, 517 F.2d 1044, 1051 (5th Cir.1975), *cert. denied*, 425 U.S. 944, 1976). But a judge is not subject to disqualification for bias and prejudice as a result of comments made based on what the judge "properly and necessarily acquired in the course of the proceedings, and are indeed sometimes ( ) necessary to completion of the judge's task," unless "so extreme as to display clear inability to render fair judgment." *Liteky v. United States*, 510 U.S. 540, 551, 114 S. Ct. 1147, 1155, 127 L. Ed. 2d 474 (1994). And as has been observed, "*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* at 555-56 (emphasis in original).

It follows that the comment that Defendant was attempting to manipulate the system by seeking to once again discharge his CJA attorney, who had just been reappointed at his request, was born out of the proceedings, not any personal bias or prejudice toward Defendant. The several Orders describing Defendant's difficulties with his lawyers and efforts to discharge them best illustrate the circumstances underlying the comment. (Dkts. 21, 42, 78, 85, 95, 103, 111, 123). As the Magistrate Judge explained:

> As the June 8 Order details, the Defendant has been unflinchingly uncooperative with his lawyers. He rejected his first court-appointed lawyer; hired a second, presumably through family resources; and, in quick order, filed a bar grievance against the second, then asked the Court to appoint a third lawyer. When the Court allowed the

---

[6] The comments certainly did not equate to the personal, derogatory comments relied on by Defendant in *Berger v. United States*, 255 U.S. 22 (1921) and *United States v. Womack*, 454 F.2d 1337 (5th Cir. 1972).

substitution, he next refused to cooperate with the third (Mr. Fitzgerald), moving for a fourth lawyer. When that strategy did not work, the Defendant decided to represent himself in full recognition of the attendant pitfalls.

(Dkt. 95 at p. 1).[7]

To borrow from my esteemed colleague in the Middle District of Alabama: "Even taking these allegations as true, the court finds that they are insufficient to 'convince a reasonable person that a bias exists' and, even if they did, it would not 'show the bias is personal, as opposed to judicial, in nature.'" *Glassroth v. Moore*, 229 F. Supp. 2d 1283, 1286 (M.D. Ala. 2002), *quoting United States v. Alabama*, 828 F.2d at 1540. The comments about which Defendant complains were made during the status conference. *See*, e.g. *Liteky v. United States*, 510 U.S. at 555 (holding that judicial decisions, and "judicial remarks ... ordinarily do not support a bias or particularity charge" and only "may" do so if based on extrajudicial sources). Therefore the comments amount to no more that the undersigned's "efforts at courtroom administration ... [which] remain immune" from charges of bias. *Id.* at 555–56.

In sum, Defendant has not demonstrated a factual or legal basis warranting disqualification under either § 144 or § 455(a).

**DONE AND ORDERED** this 21st day of November, 2017.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Defendant, Counsel of Record

---

[7] In the most recent Order granting Defendant's request to discharge Mr. Fitzgerald, the Magistrate Judge outlines the history of Defendant's efforts. (Dkt. 140) ("Last month, after yet another hearing, the Court granted Defendant's request to take back Mr. Fitzgerald as his counsel rather than represent himself. But now, true to his pattern, the Defendant again implores me to discharge Mr. Fitzgerald, stating that he "would be better served if another legal counsel [is] appointed to this cause.").

5